## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

| | | |
|---|---|---|
| ANDRE ALSTON, JR. | ) | |
| | ) | Case No: 2:24-cv-02066-TC-BGS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEYSTONE AUTOMOTIVE | ) | |
| OPERATION, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWER TO AMENDED COMPLAINT AND
### NOTICE OF AFFIRMATIVE DEFENSES

NOW COMES, Keystone Automotive Operations, Inc. ("Keystone") (misidentified as "Keystone Automotive Operation, Inc." in Plaintiff's Amended Complaint), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(a)(1) and Fed. R. Civ. P. 15(a)(3), hereby Answers Plaintiff's Amended Complaint ("Amended Complaint") and provides Notice of its Affirmative Defenses, as follows:

### PARTIES, JURISDICTION AND VENUE

1. Andre Alston, Jr. is, and at all times material hereto was, a resident of the state of Kansas.

**ANSWER:** Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 and, therefore, denies the same.

2. Keystone Automotive Operation, Inc., is a company doing business in Wyandotte County, Kansas.

**ANSWER**:  Keystone Automotive Operations, Inc. admits that it does business in Wyandotte County, Kansas.


3.      Unless otherwise noted, all events described herein occurred in Wyandotte County, Kansas.

**ANSWER**:  Denied.


4.      Venue is placed with this Court as this matter, originally filed in state court (District Court of Wyandotte County, Kansas, 24-C-04), has been removed to this court.

**ANSWER**:  Admitted.


5.      This Court can exercise personal jurisdiction over Defendant pursuant to 28 USC 1332 as the parties are citizens of different states and the amount in controversy is in excess of $75,000.00.

**ANSWER**:  Keystone admits that this Court maintains personal jurisdiction over Keystone but denies that personal jurisdiction is conferred by 28 U.S.C. § 1332 or because the amount in controversy exceeds $75,000, which pertain to subject matter jurisdiction.


## ALLEGATIONS OF FACT COMMON TO COUNT I

6.      Plaintiff was hired by Defendant as a shipping supervisor on August 15, 2022.

**ANSWER**:  Admitted.

7.    On August 20, 2023, Plaintiff tripped over a broken pallet on the warehouse floor while on duty and caught himself, jamming his left wrist and possibly injuring his left shoulder.

**ANSWER:** Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 and, therefore, denies the same.

8.    Plaintiff reported the fall and his wrist injury to his direct supervisor, Andrew McDonald, Defendant's Operations Manager, on August 22, 2023, and mentions an injury and pain associated with his right shoulder that had persisted for two weeks.

**ANSWER:**  Keystone denies that Plaintiff reported the "fall and [] wrist injury" on August 22, 2023.  Keystone admits that on August 23, 2023, Plaintiff reported that (1) he "tripped over a wooden plank . . . that caused him to stumble" causing "stinging and throbbing" in his left hand and wrist; and (2) he had developed "discomfort and pain" in his right shoulder over the course of "working extended hours in hot weather conditions."  Keystone denies any and all remaining allegations contained in Paragraph 8 of Plaintiff's Amended Complaint.

9.    McDonald responded: "You know you're supposed to report that within 24 hours."

**ANSWER:**  Admitted.

10.    Defendants' company policy stated that injuries suffered on the job were to be reported within 24 hours.

**ANSWER:**  Admitted.

3

11.     On August 22, 2023, Plaintiff also spoke with Lori Nichols, a human resources representative, to complete the wrist injury report.

**ANSWER**: Denied.


12.     Nichols suggested Plaintiff document the right shoulder pain as a non-injury incident so the company would have record of it.

**ANSWER**:  Admitted.


13.     Nichols implied the incident report would not constitute a late report of an injury as the report of Plaintiff's wrist injury had.

**ANSWER**:  Denied.


14.     Plaintiff completed the incident report for his shoulder pain as instructed.

**ANSWER**: Admitted.


15.     McDonald submitted a workers' compensation injury report regarding Plaintiff's left wrist injury on August 23, 2023.

**ANSWER**: Admitted.


16.     On August 28, 2023, McDonald told Plaintiff he needed to go to Nichols' office to review the corrective action paperwork for reporting his wrist injury later than 24 hours after the incident.

**ANSWER:** Except to deny that the meeting occurred on August 28, 2023, Keystone admits the allegations contained in Paragraph 16 of Plaintiff's Amended Complaint.

17.    Once in Nichols' office, Plaintiff sees a different manager, Christian Tudon, is present with Nichols.

**ANSWER:**    Except to admit that Tudon was present in Nichol's office during the meeting referenced in Paragraph 16 of Plaintiff's Complaint, Keystone lacks knowledge or information sufficient to form a belief as to the truth of what Plaintiff saw and, therefore, denies the remaining allegations contained in Paragraph 17 of Plaintiff's Amended Complaint.

18.    Nichols stated to Plaintiff: "They are issuing you a last and final warning for reporting the shoulder injury late."

**ANSWER:**  Keystone admits that Nichols advised Plaintiff he was receiving a "last and final" corrective action.

19.    Defendant typically has five levels to its employee discipline policy: Verbal warning; Written warning; Written warning/coaching; Action plan; Last and final warning.

**ANSWER:** Keystone admits that it maintains a progressive disciplinary policy, the contents of which speak for itself, including that Keystone maintains the right at any point to skip any step(s) in the disciplinary process.

20.    Plaintiff responded: "You told me last week that documentation was for the record only and it wouldn't be the same type of late report as my wrist because there's no accident that occurred."

**ANSWER:** Denied.

21.    Nichols responded: "Well they decided to change it to a failure to report an injury."

**ANSWER:** Denied.

22.    Plaintiff asked Nichols how it is determined when an injury should be reported if it's a recurring pain that does not resolve as normally expected.

**ANSWER:** Keystone lacks knowledge or information sufficient to form a belief as to whether Plaintiff asked Nichols "how it is determined when an injury should be reported if it's recurring pain that does not resolve as normally expected" at the time suggested in Paragraph 22 of Plaintiffs Amended Complaint, however, Keystone admits that Plaintiff asked Nichols how such an injury should be reported on at least one occasion.

23.    Nichols stated that Plaintiff still had to let someone know of the injury.

**ANSWER:** Admitted.

24.    Plaintiff stated that he was not aware he would be receiving a last and final warning, and that he was told he would be discussing a corrective action for his wrist report being late.

**ANSWER:** Admitted.

25.     Plaintiff stated to Tudon: "That is different information than what I and Nichols talked about last week."

**ANSWER**:  Denied

26.     Tudon did not respond.

**ANSWER**: Denied.

27.     On the required paperwork acknowledging a corrective action, Plaintiff wrote: "I was aware of getting a corrective action, however not a last and final. Honesty is better than failing to report at all."

**ANSWER**:  Admitted.

28.     Following the meeting, Plaintiff spoke to McDonald about the corrective action he received, and McDonald indicated his frustration and stated to Plaintiff he would work on downgrading the action to a verbal or written warning.

**ANSWER**:  Except to admit that Plaintiff spoke with McDonald following receipt of the last and final corrective action, Keystone denies the allegations contained in Paragraph 28 of Plaintiff's Amended Complaint.

29.     Plaintiff spoke to McDonald multiple times about the status of the corrective action, and McDonald stated he was working on it.

**ANSWER**:  Denied.

30.    On or about the middle of September 2023, a zoom panel meeting was scheduled to discuss the incident in which Plaintiff injured his left wrist.

**ANSWER:**  Admitted.

31.    The meeting was rescheduled once before it took place.

**ANSWER:**  Admitted.

32.    Prior to the meeting, Alston met with Nichols at the direction of McDonald.

**ANSWER:**  Except to admit that McDonald may have advised Plaintiff to speak with Nichols if he had questions about the referenced meeting, Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of Plaintiff's Amended Complaint and, therefore, denies the same.

33.    Nichols stated to Plaintiff she wanted to prepare him for the panel meeting because it would feel as though he was being ganged up on and attacked because they would be asking many questions and Plaintiff had expressed his stress over how the incident had been handled.

**ANSWER:** Denied.

34.    Prior to the panel meeting, McDonald showed Plaintiff video footage of when Plaintiff fell and landed on his wrist.

**ANSWER:** Admitted.

35.    McDonald implied Plaintiff had a great memory for recalling the incident.

**ANSWER:** Denied.

36.     The panel meeting was held via Zoom, and Plaintiff and McDonald shared a computer in McDonald's office.

**ANSWER:** Admitted.

37.     Present at the meeting were Plaintiff, McDonald, Nichols, Kansas City site lead Shawn Chenoweth, a regional safety manager named Manny (last name unknown), and an unknown Pennsylvania site lead.

**ANSWER:** Except to admit that Plaintiff, McDonald, Nichols, Shawn Chenoweth, and Manuel (Manny) Sanchez attended the meeting, Keystone denies the allegations contained in Paragraph 37 of Plaintiff's Amended Complaint.

38.     Once the meeting concluded, McDonald thanked Plaintiff for his professionalism and ability to communicate effectively to upper management.

**ANSWER:** Denied.

39.     On or about the middle of September, Plaintiff was issued his first ever verbal warning related to attendance.

**ANSWER:** Denied.

40.     Following the panel meeting, Plaintiff noticed a change in how McDonald and Chenoweth managed him.

**ANSWER:** Keystone lacks knowledge or information sufficient to form a belief as to what Plaintiff claims he "noticed" and, therefore, denies the same. Keystone denies that McDonald or Chenoweth changed how they managed Plaintiff.

41.     McDonald became more critical of Plaintiff in conversation and shifted work normally done by associates to Plaintiff.

**ANSWER:** Denied.

42.     Chenoweth began supervising Plaintiff closely by being present in Plaintiff's work space without helping complete tasks, which he had never done prior to the panel meeting.

**ANSWER:** Denied.

43.     During this time period, Plaintiff voiced concerns about his mental health to Nichols, who encouraged him to seek the help he needed and provided Family Medical Leave Act paperwork.

**ANSWER:** Admitted.

44.     On October 24, 2023, Plaintiff used his left arm and shoulder to move a Home Depot bucket divider as allowed by the doctor's restrictions for his previous injuries.

**ANSWER:** Denied.

45.     Plaintiff felt a sharp, cramp-like pain in his left shoulder.

**<u>ANSWER</u>:** Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of Plaintiff's Amended Complaint and, therefore, denies the same.

46.     Plaintiff reported the injury to McDonald the same day.

**<u>ANSWER</u>:** Admitted.

47.     On October 26, 2023, McDonald completed the injury incident report and showed Plaintiff video of the incident.

**<u>ANSWER</u>:** Admitted.

48.     McDonald stated that Plaintiff did not use his right shoulder and that McDonald specifically asked him to help move the divider because other people were working.

**<u>ANSWER</u>:** Denied.

49.     McDonald stated further that there were no policies violated in the injury.

**<u>ANSWER</u>:** Denied.

50.     When later attempting to complete the report, McDonald informed Plaintiff he violated a workplace policy and should have asked an associate to move the divider.

**<u>ANSWER</u>:** Denied.

51.    McDonald refused to put Plaintiff's notes and recollections of the incident into the incident report.

**ANSWER:**  Denied.

52.    Plaintiff was not afforded the opportunity to go in front of another panel as he had with the previous injury.

**ANSWER:**  Keystone admits that Plaintiff did not appear before an OSHA review panel. Keystone denies that Plaintiff was entitled to any such review and further denies the allegations contained in Paragraph 52 of Plaintiff's Amended Complaint.

53.    On or about October 30, 2023, McDonald stated that Nichols had questions about the report and wanted to change the verbiage.

**ANSWER:**  Except to admit that McDonald may have informed Plaintiff that Nichols had questions about the October 26, 2023, incident report and may needed to provide additional or clarifying information, Keystone denies the allegations contained in Paragraph 53 of Plaintiff's Amended Complaint.

54.    On November 2, Plaintiff turned in a doctor's note to Nichols, who stated she had paperwork for the shoulder injury.

**ANSWER:**  Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 of Plaintiff's Amended Complaint and, therefore, denies the same.

55.    Nichols received a phone call while Plaintiff was in the office.

**ANSWER**:  Admitted.


56.    Plaintiff and McDonald agreed Plaintiff would lead the employee meeting that began each shift.

**ANSWER**:  Denied.


57.    The meeting lasted approximately 10 minutes.

**ANSWER**:  Keystone admits that the shift meeting that occurred on November 2, 2023 may have lasted "approximately ten (10) minutes."  Keystone denies that Plaintiff "lead" that meeting and denies any remaining allegations contained in Paragraph 57 of Plaintiff's Amended Complaint.


58.    Following the meeting, Plaintiff attempted to go back to Nichols' office to finish their conversation.

**ANSWER**:  Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of Plaintiff's Amended Complaint and, therefore, denies the same.


59.    Plaintiff noticed Chenoweth was following him toward Nichols' office.

**ANSWER**:  Keystone lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of Plaintiff's Amended Complaint and, therefore, denies the same.

60.     Nichols indicated to Plaintiff they would go to the conference room.

**ANSWER**: Admitted.


61.     Nichols told Plaintiff at the current point Defendant had decided to end his employment.

**ANSWER**: Admitted.


62.     Plaintiff expressed his surprise and asked if there was anything he could do for it not to be the decision.

**ANSWER**: Admitted.


63.     Chenoweth said Defendant was terminating him for performance, and said "Poor performance, that's what we're going to call it."

**ANSWER**: Denied.


64.     Chenoweth said Defendant has people that investigate and look into these things to validate them, which Plaintiff took to mean his workers' compensation claims.

**ANSWER**: Denied.


65.     Chenoweth reiterated Defendant "was just going to call it performance."

**ANSWER**: Denied.


66.     Plaintiff again asked if there was anything he could do to not be terminated.

**ANSWER:**  Keystone admits that Plaintiff asked on more than one occasion if there was anything he could to avoid his employment with Keystone ending.

67.    Nichols responded there was not, and asked Plaintiff if he had any questions.

**ANSWER:**  Admitted.

68.    Plaintiff was then allowed to leave the premises.

**ANSWER:**  Keystone denies that it prevented Plaintiff from leaving its premises whenever he desired.

69.    No paperwork was given to Plaintiff regarding his termination.

**ANSWER:**  Admitted.

## COUNT I
## AS TO ALLEGED WORKERS' COMPENSATION RETALIATION

70.    The Plaintiff hereby incorporates by reference paragraphs 1 through 69 above as though fully set forth herein.

**ANSWER:**  Keystone reasserts its answers to Paragraphs 1 through 69 as if fully set forth herein.

71.    The Plaintiff suffered an on-the-job injury for which he could have, and did, assert a claim for workers' compensation under the provisions of K.S.A.44-501.

**ANSWER:** Keystone admits that Plaintiff allegedly suffered an on-the-job injury and pursued at least three different workers' compensation claims.  Keystone denies any remaining allegations contained in Paragraph 71 of Plaintiff's Amended Complaint.

72.    The Defendant had knowledge of the Plaintiff's on-the-job injury.

**ANSWER:** Keystone admits that it had knowledge of certain alleged on-the-job injuries.


73.    The Defendant terminated the Plaintiff.

**ANSWER:** Admitted.


74.    A causal connection existed between the protected activities of seeking medical treatment for the on-the-job injury and making a workers' compensation claim, and the termination.

**ANSWER:** Denied.


75.    The stated reason for the termination was pretextual.

**ANSWER:** Denied.


76.    Defendant's conduct was willful, wanton, and intentional.

**ANSWER:** Denied.


77.    The Plaintiff has sustained damages.

**ANSWER:** Denied.


WHEREFORE, the Plaintiff requests the Court to enter a judgment against the Defendant in excess of $75,000, for back pay, including wage increases and reimbursement of any lost fringe benefits, retirement plan benefits, pension benefits, Social Security contributions, for an award of

front pay, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, punitive damages, for pre-judgment interest, for costs, and for such other and further relief as the Court may deem just and equitable.

**ANSWER:** The allegations following the "WHEREFORE" paragraph contained in Plaintiff's Amended Complaint are characterizations of Plaintiff's claims and statements of relief sought by Plaintiff to which no response is required.  To the extent a response is required, Keystone denies the allegations, denies that Plaintiff is entitled to any relief whatsoever, and requests that judgment be entered in its favor and that it be awarded its reasonable costs and attorney's fees.

## NOTICE OF DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, Plaintiff's Complaint, in whole or in part, fails to state a claim for which relief may be granted.

### SECOND DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, Plaintiff's claims are barred to the extent they involve transactions or events or seek damages for periods of time outside the applicable statute of limitations period(s).

### THIRD DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, Plaintiff's claims are barred to the extent he has failed to satisfy the conditions precedent to filing the claims in his Complaint and/or failed to exhaust his administrative remedies.

## FOURTH DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, Plaintiff's claims are barred, in whole or in part, to the extent he has failed to fully mitigate his alleged damages or other losses as required by law.

## FIFTH DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, assuming any of Plaintiff's protected rights were violated, Defendant is not liable for punitive damages because of any improper acts on the part of its employees as those acts were contrary to Defendant's good faith efforts to comply with the law by implementing policies and programs designed to prevent such improper acts in the workplace.

## SIXTH DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, Plaintiff's claims for damages are barred, in whole or in part, to the extent that he is and/or was unable to work, which was neither caused by, nor related to Plaintiff's separation from Defendant.

## SEVENTH DEFENSE

Without prejudice to Defendant's denials and other statements of its pleadings, Plaintiff's claims may be preempted, in whole or in part, by the Kansas Workers Compensation Act's exclusivity provision(s).


Defendant reserves the right to plead other defenses as they become known to it during the litigation of this case.

**WHEREFORE**, having fully answered the allegations of Plaintiff's Amended Complaint and having raised defenses thereto, Defendant prays that judgment be entered against Plaintiff and that the Court grant any such other relief deemed appropriate.

Dated: May 9, 2024

Respectfully submitted,

Keystone Automotive Operations, Inc.

By: _/s/ Gregory D. Ballew_
    Craig Annunziata, *Pro Hac Vice*
    Jason D Keck, *Pro Hac Vice*
    **FISHER & PHILLIPS LLP**
    10 S. Wacker Drive, Suite 3450
    Chicago, IL 60606
    Telephone: (312) 346-8061
    Facsimile:  (312) 346-3179
    cannunziata@fisherphillips.com
    jkeck@fisherphillips.com

    -and-

    Gregory D. Ballew, Kansas Bar No. 17214
    **FISHER & PHILLIPS LLP**
    4622 Pennsylvania Avenue, Suite 910
    Kansas City, MO 64112
    Telephone: (816) 466-1236
    Facsimile: (816) 842-8767
    gballew@fisherphillips.com

    Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on May 9, 2024, the foregoing was filed using the Court's electronic filing system and will also be sent via email to the following counsel of record:

Barry R. Grissom
Jacob Miller
Grissom Miller Law Firm, LLC
1600 Genessee Street, Suite 460
Kansas City, MO 64102
barry@grissommiller.com
jake@grissommiller.com


_/s/ Gregory D. Ballew_____
Attorney for Defendant